We are going to move now to Appeals 25-1917, 1918, and 1919. Jane Doe 1 et al. v. Steven Sloan et al. We'll begin with oral argument on behalf of the appellant. Good morning, Your Honors. May it please the Court. We are here today because the police gave child pornography to an unauthorized individual. Utilizing an improperly narrow definition of a right, the District Court dismissed Plaintiff Section 1983 claims against the defendant municipalities for that exact conduct. This was an incorrect and improper dismissal because, first, plaintiffs do have, and properly pled, a fundamental, clearly established constitutional right to the non-disclosure, excuse me, to the non-consensual dissemination of access to their private sexual images, and, two, because the District Court improperly construed Iqbal pleading standards at the motion-to-dismiss stage. Can you address the clearly established point? What is your best argument as to why this constitutional right is clearly established? So, clearly established is something that we believe exists based upon the York case. The York v. Story case in the 9th Circuit. Now, that was 1963, 9th Circuit. Correct. Intentional conduct. Correct. Here, it's difficult to characterize this as intentional conduct, especially due to the factual break between bent and musclement, right? I would disagree, Your Honor. So, in York v. Story, Miss York was a crime victim that was at the police station, had her photographs taken of her naked body to help identify this perpetrator. Those images then were disseminated without her consent to other unauthorized police personnel. That is actually what happened here. All of, well, at least three of the Jane Doe plaintiffs had their images that were in the possession of Stark County, also potentially, again, City of Toulon because of Mr. Bent's dual role, that was then disseminated to Jason Musselman, who was an unauthorized person and should not have had access to them. Not only, there's a further investigation argument that I want to get to in particular, but permanent unrestricted access in the same way that Miss York's prints were permanent unrestricted access to those naked photos. I see the connection, potentially, between Sloan knowing, but where is the allegation that Bent knew of Musselman's perversions? I don't think, actually, that that matters as much. I think, first of all, a well-pled complaint like this one at a motion-dismissed stage, everything should be considered true. So there should have been some, because we have pled facts, it should be assumed that both Sloan and Bent had some knowledge, potentially, of these proclivities just due to the small nature of this area. However— Let me drill down on that because that's a very important point. Sloan knew that Bent had spoken to Musselman about the Blue Breeze files, and the complaint says Bent did this on his own after Sloan asked for help with the investigation. Sloan even had knowledge, apparently, as pleaded, that there had been pornography on Musselman's previous computer. But the complaint—are you asking us to say because this is a small town in a small county, everybody should know that Bent knew of Musselman's improprieties? I think that is a fair inference that could have been made, and it should have been made in our favor. Is there a part of the complaint you want to point us to on that? So, I believe there are allegations in here, and if given the opportunity or if that's something that's required, I can go back and look specifically. But I do believe there's at least some indication that this was a small area. Sloan worked with Bent in these couple different capacities. Bent was utilized both as chief of police of Toulon as well as a deputy sheriff of Stark County. And I think I want to kind of step back from that as well. The knowledge of the proclivity, I think, also maybe does not matter as much anyway. What we're talking about here is that regardless of whether or not they knew what Musselman's proclivities were, he was still unauthorized. He should not have been given permanent, unrestricted access to child pornography based on any role that he did or did not have in either Stark County or the city of Toulon. Counsel, a question about the liability standard here. So, first, you need to identify a right that's protected by the substantive component of the due process clause. But then don't you also need to establish that the conduct shocked the conscience in order to satisfy city of Sacramento against Lewis? So, yes, from a totality standpoint. But I believe we've also pled that here. We believe that it is shocking to have someone in Bent's position or Stone's position give permanent, unrestricted access of child pornography to someone that should not have had it. And I want to even put that in maybe some more context just as we're talking about this right now. Based on the incident report that was provided as attached to several pleadings that was authored by Bent that is on Stark County letterhead. But he actually gives his city of Toulon police email address for the tipster. He's utilizing both roles. We're unclear as to exactly even what the investigation was. But based on that incident report, it seemed to be that Musselman was brought on to this investigation, again, with what authority we don't know, to help identify the victims. Because he might have had some idea of who these victims were because they were local girls. So if that was the furtherance, if that was what was intended, there is no reason that this is how it had to happen. He could have had, Mr. Bent could have had Musselman stand behind him as he reviewed these images. They could have been redacted. It could have been just their faces. They're viewing the child pornographic portion of these images in no way further than an investigation. That's what shocks the conscience so much. Giving permanent, unrestricted access to this child pornography is what shocks the conscience. None of those things could have furthered any investigation and didn't have any authority to happen in the first place. We're here on Rule 54 appeal. Just so we get a good feel for the rest of the case, it continues in the district court. There's a complaint made under the child pornography statute, correct? And there's an intrusion by seclusion claim existing. That's all going forward in the district court. Is that currently stayed there pending this appeal? It is not. Nope. It's ongoing. Okay. Thank you. Yep. You can continue. Just a piggyback question. Is there separate litigation against Musselman himself? I think perhaps just I might have misunderstood. So the initial complaint was against Jason Musselman for the tanning bed photos. We did not find out about the photos that were passed on from Stark County until his sentencing hearing, which was actually a year after we filed. Maybe a little over that against Musselman. And the plea? Thank you. You can continue. So we kind of touched on a majority of the right existing as well as this idea of a furtherance of investigation. To your Honor's point about a right, we believe we have pled that within our second amended complaint. In paragraph 314 of 1-7 of their complaint, we say that we have a right to avoid the non-consensual dissemination of access to our private sexual images. We believe that is mirrored from York. Could you give us that site again? Paragraph 314. 314 of the second amended complaint. Of the second amended complaint for Jane Doe's 1-7. For Jane Doe's 1-7. Yes. Thank you. Yes. So because we have pled that already, that should be assumed to be what our right is. The district court as well as the appellees as well as our own pleadings have kind of tried to muddle that right. At this stage, we should have had to have pled the facts to support that right. That right is mirrored in York, which was then brought over in this circuit, adopted, and in fact expanded from just private citizens to a prisoner context, which in no way again limits that right and in fact expands that right. So it should absolutely be something that was clearly established here back then. There's also, again, federal criminal statutes, including the very one that landed Jason Musselman in prison for 35 years, in part because of his dissemination of Jane Doe 8's images that he got from this action by Sloan and Bent that have also existed. There's no way that any reasonable officer would not have known this was a violation of a constitutional right. We're going to give you some rebuttal time, but let me just clarify your comment. You said York was adopted and expanded from private citizens to the prison context in this circuit?  And what case was that? Candy v. Borman in 1994. Candy v. Borman, 1994. Yes. Yep. I'm going to reserve the rest of my time. Very good. We'll give you some more time after that. Thank you. Thank you. We'll now move to argument on behalf of the appellee, Mr. Matthews. Good morning, Your Honors, and may it please the Court. I'm David Matthews. My partner, Mr. Bressani, and I represent Sheriff Sloan and Stark County. Mr. Modolinski represents Mr. Bent in the city of Toulon, but for the sake of efficiency, I will be delivering all of the arguments today. There are a lot of reasons why this Court should affirm Judge Hawley's decision, but the simplest and cleanest comes from a simple question. Which court has held that there is a generalized right to non-consensual dissemination of naked images? The answer to that question is zero. Which court has held—federal appellate court, I should say—has held that when law enforcement are sharing already created images in the course of a law enforcement investigation, that violates the substantive due process clause? The answer to that question is also zero. And it is essential that we understand just what sort of a right we're talking about when we speak of the need to federal appellate precedent. We're not talking about the Fourth Amendment. We're not talking about the First Amendment and free speech. We're talking about the substantive due process clause, where the Supreme Court has repeatedly said that the list of rights protected by the substantive due process clause is short. They have said in—Glucksberg is one of the more famous articulations—that the guideposts are few when it comes to substantive due process. It can be divorced from the text and tradition of constitutional rights, and the need for concrete definitions is paramount, and the need for precedent is paramount. Now— Mr. Matthews, our case law discourages district courts from engaging in a QI analysis at the motion-to-dismiss stage. Did the judge here get too close to that in his analysis? I don't think so, Your Honor. I think the judge made very—Judge Hawley made very clear that no court has ever recognized such a right, and you could take that to view as a qualified immunity standard. But I think what Judge Hawley was saying in that paragraph is he's saying there's just no precedent to support that the right exists, period. So he's addressing the first step of qualified immunity, not necessarily the second. I realize reasonable judges might disagree how they read that, but I read that as the first step, and I would encourage the court to read it in that way. But even if, Your Honor, were to read it as addressing qualified immunity, that doesn't change the outcome. This court has said and has even on occasions affirmed dismissals at a motion-to-dismiss stage granted based on qualified immunity. It's not preferred, but it's also not categorically forbidden. So this is a small county and an even smaller town in the county. Yes, Your Honor. Is there a difficulty for your side of the V with the fact that Bent was also a deputy sheriff? He's in this dual role, as counsel has discussed. Even the letterhead and the emails are overlapping. I don't think so, because—for several reasons. The first reason is there's just no constitutional right in the first place, regardless of what hat Mr. Bent happens to be wearing. The second reason is this issue of knowledge. And in pushing for a different result, the plaintiffs make a number of errors, and one of the things they get wrong is this issue of knowledge. The district court pointed out very clearly they don't allege that anyone saw obvious child pornography. They don't allege that anyone who is a qualified expert, if you've ever done these sorts of prosecutions, oftentimes a doctor will be consulted. Can you say, to a reasonable degree of certainty, this person is a minor as opposed to a teenager? They don't plead that. They don't plead that there was probable cause. All they plead is that there was one photograph where the participants could have been children or young adults. Is it icky? Is it unprofessional? Would it violate many people's moral codes? Definitely. But they do not plead that there is any knowledge of child pornography. They don't do it because they can't do it. They know the record is that they can't do it. And when they cite to this court that they pleaded that Sloan and Bent knew, they give a string cite to about six or seven different paragraphs, and they don't quote any language because it's not there. Mr. Matthews, putting aside the constitutional question in this case, this handling of CSAM was quite unprofessional and careless. Does the county or the sheriff's office have better training programs or protocols in place now to make sure something like this doesn't happen again? I would hope so. This is not in the record, but I will tell your honors that in a past life I was a Cook County State's attorney assigned to the Child Advocacy Center and that my former supervisor would not have been pleased as to how things were done. I hope they do, but I haven't had any conversations personally, so I can't represent to your honor one way or the other. As one of your colleagues had pointed out, this isn't Cook County. This is a county of 5,000 people, fewer people there today than when Abe Lincoln was president. I want to get something to your question, though. I agree that it's not the best handling, and I'll make two points to that. One, they keep bringing up this issue of whether it was authorized, authorized, authorized. That's a legal conclusion, and it's a wrong legal conclusion. Illinois law couldn't be more clear. The sheriff can ask anyone to help him out, and moreover, whether or not something is authorized under state law is irrelevant to whether it violates substantive due process. If a police officer pulls someone over for speeding or arrests someone for bank robbery, it doesn't matter if they weren't properly sworn in under Illinois law. The question is, well, was there probable cause? York is not just an old case. It's a case that the Ninth Circuit itself has said, don't take certain language from York and read it so broadly. One of your honors pointed out that York is dealing with intentional conduct, conduct that probably today would be criminalized. It's a deliberate conspiracy in which this lady is lied to. She's lied to that the photos are necessary. She's lied to about whether they developed, and then the original perpetrator and his co-conspirators circulate the photographs. Nothing like that happened in this case. They make a lot about training and say, well, there needs to be more training, and I would agree. It's not ideal protocols. That said, the Supreme Court has held that Monell cases and failure to train is the hardest kind of Monell case to bring. You can always say there's more training. Especially in a place like Stark County, you can say the training could be better. But ultimately, there is no allegation that Bent and Sheriff Sloan had training that Musselman didn't have. So that can't make the difference. There's nothing that crosses the threshold of plausibility that would suggest that if Musselman, who had already perpetrated crimes years before, somehow had training, that he would just not have done what he did. I want to make two more points as my time is winding down, of course, unless your honors have questions. Another essential thing that the plaintiffs get wrong is the context of this being a law enforcement investigation, even if not handled the way up to modern standards. The Doe v. Gray case decided a couple years ago in which this court makes the point that even if there is a generalized right to privacy of certain information, it doesn't exist in the context of a police or child welfare investigation. Does that mean that the police always share things the way that they should? No. But the plaintiffs try and distinguish that case and they say, well, Doe doesn't matter because it deals with an adult's gender identity. But that's not what Doe said. There's nothing in Doe that suggests the result would be different based on whose materials were at issue. It's the context that matters. All of the other cases the plaintiffs cite, they also deal with surreptitious videoing by law enforcement. They deal with a prison strip shows. None of them deal with already existing photos that are shared in the context of investigation. And at the end of the day, the question becomes, how is it that the plaintiffs can say, as they concede, Bent and Sloan were authorized for this investigation? We have no problem with what they did, but we have a problem with Moselman. It can't be training because they don't allege anything that training is different. It can't be permanent unrestricted access. They don't allege and they can't allege that Moselman had any more or less access than Sloan or Bent. It can't be gender or the fact that they were minors. It's all the same. It simply comes down to what turned out to be true about Jason Moselman. And they do have a remedy for that. They have a restitution order that was entered by the district court in the criminal case. They're proceeding in civil cases against him, and Moselman is serving a long and well-deserved prison sentence. Several recent cases, and we cite them in our brief, this court has rejected attempts by plaintiffs to hold municipalities liable for private, far outside the scope of employment, off-duty criminal activities by municipal employees. Those cases were correct, and the district court here was correct. There should not be any new right of substantive due process created, and we would ask that you would affirm Judge Hawley's thorough and well-reasoned opinion. Thank you, Mr. Matthews. We'll move now back to rebuttal argument. Two minutes, please. Thank you. I appreciate the extra time as well. So I wanted to start just with a couple of points that Mr. Matthews just made just to kind of clarify a little bit. There's been a lot of back and forth about the conduct of Benton Sloan versus the conduct of Moselman, and I would argue that Appalese, as well as the district court to some extent, focused too much on Moselman's conduct, when ultimately what we're talking about is Benton Sloan's conduct here. We're not talking about whether or not Benton Sloan had authority to access those photos. They did. That's not contested. We're talking about whether or not they had the authority to provide access, unrestricted, permanent access of child pornography to Jason Moselman. That doesn't have to do with what Moselman did with it after the fact. That action of giving that link over is what we're here about today. That's the violation of Section 1983 for these plaintiffs. As to this idea of the posse statute, that would have allowed Sloan to help him out. I can't imagine that's unlimited. I can't imagine. Again, that hasn't been briefed fully. That's been something that's been kind of mentioned in a couple of pleadings, but hasn't been supported by any case law or any other facts that would help us kind of determine whether or not that actually is true. Here, that can't be an unlimited right just because he was a sheriff, that he has unlimited right to give child pornography to someone that wasn't authorized. I also wanted to touch on just the fact that we're talking here about a pleading standard where there are also still facts that are up in the air, and at this juncture that should not have been ruled upon as a dismissal. There are facts as to authorization. There are facts as to what investigation happened, where, with whom, to what extent. There's questions as to what protocols were in place. Monel was not considered at the district court level because he stopped at this idea of a right. That's not even something we've even been able to look into yet. Dismissal was improper at this stage. There is a right that has been sufficiently pled, and we would ask that this court reverse the district court's ruling. Thank you, counsel. Thank you, counsel. The case will be taken under advisement. Thank you. Thank you.